**UNITED STATE DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **COLLEEN SHAIKA,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:15-0294** |
| **v.** | : | **(JUDGE MANNION)** |
| **GNADEN HUETTEN MEMORIAL HOSPITAL, et al.,** | : | |
| **Defendant**s | : | |
| | : | |

## MEMORANDUM

Pending before the court is the defendants' motion to dismiss the plaintiff's complaint. (Doc. 11). The plaintiff, who was deaf, sued the defendant hospital and health systems under the ADA, the Rehabilitation Act, as well as the PHRA and asserted a negligent infliction of emotional distress claim. The plaintiff alleges that defendants failed to accommodate her hearing disability by providing an acceptable way to communicate information to her regarding the treatment and condition of her daughter who was transported to the hospital on an emergency basis. The hospital's Video Remote Interpreter ("VRI") did not work and a written note was used to communicate to the plaintiff and to inform her that her daughter passed away. Based upon the court's review of the motion and the materials related thereto, the motion to dismiss will be **GRANTED, IN PART, AND DENIED, IN PART**.

## I.   FACTUAL BACKGROUND[1]

The plaintiff, Colleen Shaika, received a telephone call in the early morning of February 17, 2013, advising that her daughter Jennifer Shaika was being rushed to defendant Gnaden Huetten Memorial Hospital ("GHMH"), Lehighton, PA. The plaintiff, who has been deaf since birth, arrived at GHMH and requested an American Sign Language ("ASL") interpreter so she could be informed of her daughter's condition and treatment. GHMH did not have an interpreter when plaintiff arrived nor during any of her time at the hospital. GHMH had a VRI device, however, this device was not functioning and could not be utilized when plaintiff was at GHMH.

Plaintiff's daughter was pronounced dead on arrival at GHMH. The cause of death on Jennifer's death certificate was heroin toxicity complicated by her asthma. (Doc. 15-1). Since GHMH could not communicate with plaintiff using ASL, a nursing staff member communicated with her using a written note. The note informed plaintiff that her daughter died and simply stated, "your daughter is dead." (Doc. 15-2). No information as to how plaintiff's daughter died was given. The note also asked plaintiff if she needed medicine to help her relax and then indicated that plaintiff would be given a shot.

_____

[1]The facts alleged in plaintiff's complaint must be accepted as true in considering the defendant's motion to dismiss. *See* Dieffenbach v. Dept. of Revenue, 490 Fed.Appx. 433, 435 (3d Cir. 2012); Evancho v. Evans, 423 F.3d 347, 350 (3d Cir. 2005).

Subsequently, the plaintiff attempted to find out how and why her daughter died and through counsel she sought a meeting at GHMH. When plaintiff arrived at the meeting on April 4, 2013, with her counsel, GHMH did not have an interpreter and its VRI was again not operating. When GHMH staff realized that plaintiff was accompanied by counsel, the meeting was cancelled and plaintiff did not receive any information relating to her daughter's death that day.

On April 11, 2013, counsel for plaintiff requested her daughter's medical records and had to open an estate to obtain them. The medical records were received by plaintiff on May 7, 2013.

The plaintiff then commenced this action against GHMH, Blue Mountain Health System, Inc. ("BMHS"), Lehigh Valley Physicians Group ("LVPG") and Lehigh Valley Health Network, Inc. ("LVHN"). The plaintiff contends that the failure of defendants to effectively and adequately communicate with her about her daughter's medical condition violated federal as well as state law. The plaintiff alleges that places of public accommodation are required to ensure that persons with a disability are not denied services, and they must furnish appropriate auxiliary aids to ensure effective communication. The plaintiff avers that this accommodation extends to companions who themselves are individuals with disabilities. The law allows VRI as an acceptable method of providing auxiliary aids. Federal regulations indicate that written notes may not ensure effective communication, particularly in

3

medical situations, and thus "interpreters should be used when the matter involves more complexity, such as in communication of medical history or diagnoses, in conversations about medical procedures and treatment decisions." 28 C.F.R. pt. 36 app A.

## II. PROCEDURAL HISTORY

By way of relevant background, on February 10, 2015, the plaintiff initiated the instant federal question action pursuant to Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§12181, *et seq*., raising a claim of unlawful discrimination based on her hearing disability. (Doc. 1). The plaintiff has also alleged a violation of the Pennsylvania Human Relations Act ("PHRA")[2], 43 P.S. §§951-963, and asserted a federal claim under Section 504 of the Rehabilitation Act of 1973 (the "RA"), 29 U.S.C. §794. Further, the plaintiff raised a state law claim of negligent infliction of emotional distress.

As relief, the plaintiff seeks the court to declare defendants violated Title III of the ADA, Section 504, and the PHRA. The plaintiff also seeks the court to issue an injunction ordering defendants to provide qualified sign language

---

[2]The "analysis of an ADA claim applies equally to a PHRA claim." Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999) (citing Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996)). Therefore, the court will consider both claims together.

interpreters or other appropriate auxiliary aids or services in order to ensure effective communication with deaf and hard-of-hearing individuals. Further, the plaintiff requests damages as well as her attorney's fees and costs.

This court's jurisdiction over the plaintiff's federal claims is based on 28 U.S.C. §1331 and, the court's pendent jurisdiction over her state claims is based on 28 U.S.C. §1337.

The defendants filed a motion to dismiss the entire complaint on April 13, 2015. (Doc. 11). On April 27, 2015, the defendants filed their brief in support of their motion with attached exhibits. (Doc. 15). On May 14, 2015, the parties filed a stipulation of voluntary of dismissal with respect to all claims asserted against defendants LVPG and LVHN, pursuant to Fed.R.Civ.P. 41(a)(1), since neither defendant held any ownership interest in GHMH. (Doc. 20). On May 18, 2015, the court approved of the stipulation and, defendants LVPG and LVHN were terminated from this case. (Doc. 23). On May 21, 2015, the plaintiff filed her brief in opposition to the defendants' motion to dismiss with exhibits, including the plaintiff's affidavit. (Doc. 26). The remaining defendants, GHMH and BMHS, filed a reply brief on June 4, 2015. (Doc. 27).

The motion to dismiss of defendants is ripe for disposition.

## III.    STANDARDS OF REVIEW

### A. Rule 12(b)(1)

The defendants' motion, in part, facially challenges this court's subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure claiming that the plaintiff lacks standing to bring her claims for injunctive and declaratory relief since she has no present or continuing injury, thereby depriving this court of jurisdiction. "Dismissal under a facial challenge is proper 'only when the claim clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or ... is wholly insubstantial and frivolous.'" Byrne v. Cleveland Clinic, 684 F.Supp.2d 641, 648-49 (E.D.Pa. 2010) (citing Kehr Packages, Inc., 926 F.2d at 1408–09) (quoting Bell v. Hood, 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946)). "In this circumstance, the court must accept all well-pleaded allegations in plaintiff's complaint as true, and must view them in the light most favorable to the non-movant." Id. at 649 (citing In re Kaiser Group Int'l Inc., 399 F.3d 558, 561 (3d Cir. 2005)). Additionally, "a party asserting that the court has jurisdiction always bears the burden of showing that the case is properly before the court." Id. (citing Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1045 (3d Cir. 1993); McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)).

"A motion to dismiss under Rule 12(b)(1) challenges the jurisdiction of the court to address the merits of the plaintiff's complaint." Vieth v.

6

Pennsylvania, 188 F.Supp.2d 532, 537 (M.D.Pa. 2002) (citation omitted). "A challenge to the standing of a party raises the issue of justiciability and implicates the subject matter jurisdiction of a federal court." Miller v. Hygrade Food Products Corp., 89 F.Supp.2d 643, 646 (E.D.Pa. 2000). As such, the appropriate device to raise the issue of standing is a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction. Id. "Unlike dismissal under [Fed. R.Civ.P.] 12(b)(6), dismissal under Rule 12 (b)(1) for lack of subject matter jurisdiction is not a judgment on the merits of plaintiff's case, but only a determination of the court lacks the authority to hear the case." Swope v. Central York School Dist., 796 F.Supp. 2d 592, 599 (M.D. Pa. 2011) (citing Mortensen v. First Federal Sav. and Loan Ass'n, 549 F. 2d 884, 891 (3d Cir. 1977)).

### B. Rule 12(b)(6)

The defendants' motion to dismiss is also brought pursuant to the provisions of Fed. R. Civ. P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly,

550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [necessary elements]" of the plaintiff's cause of action. Id. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting Twombly, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002). However, the

8

court may not rely on other parts of the record in determining a motion to dismiss. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

Generally, the court should grant leave to amend a complaint before dismissing it as merely deficient. *See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007)*; Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

## IV.    DISCUSSION

Initially, the plaintiff withdrew her state law claim of negligent infliction of emotional distress, (Doc. 26, at 21), so that need not be discussed further. Also, defendants LVHN and LVPG were previously dismissed. As such, the plaintiff's ADA, PHRA and Rehabilitation Act claims remain only as against GHMH and BMHS.

Additionally, insofar as the plaintiff requests monetary damages with respect to her claim under Title III of the ADA, such relief is improper and will be dismissed with prejudice. "Under Title III of the ADA, private plaintiffs may not obtain monetary damages and therefore only prospective injunctive relief is available." Anderson v. Macy's, Inc., 943 F.Supp.2d 531, 538 (W.D.Pa.

2013) (citation omitted). The plaintiff is permitted to request injunctive relief with respect to her Title III ADA claim. Id.

### A. Standing for Title III ADA Claim

Under Title III of the ADA, discrimination is prohibited "against the disabled in the full and equal enjoyment of public accommodations." Spector v. Norwegian Cruise Line Ltd., 545 U.S. 119, 128, 125 S.Ct. 2169, 162 L.Ed.2d 97 (2005). As such, entities that provide public accommodations, in part, must provide auxiliary aids and services to disabled individuals. Id. (citations omitted).

In the pending motion to dismiss, the defendants initially argue that all of the plaintiff's federal claims should be dismissed since she lacks standing to bring a claim for injunctive relief under Title III of the ADA. The defendants state that the court lacks subject matter jurisdiction requiring dismissal of the federal claims under Rule 12(b)(1) since plaintiff did not allege she faced real and immediate threat of future injury. The defendants state that since the plaintiff did not have a history of using defendants' services in the past two years, "it stands to reason that she is not likely to require it in the 'imminent' future." (Doc. 15, at 13).

"Because the remedy for a private ADA Title III violation is injunctive relief, courts look beyond the alleged past violation and consider the possibility of future violations." Heinzl v. Starbucks Corp., 2015 WL 1021125,

10

*5 (W.D.Pa. March 09, 2015). "Plaintiffs seeking prospective injunctive relief must demonstrate a 'real and immediate threat' of injury in order to satisfy the 'injury in fact' requirement of standing. Id. (citing Anderson, 943 F.Supp.2d at 538). Standing is a threshold jurisdictional requirement, derived from the 'case or controversy' language of Article III of the Constitution." Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc., 123 F.3d 111, 117 (3d Cir. 1997) (citation omitted). "Plaintiffs must have standing at all stages of the litigation, [], and they bear the burden of proving it 'with the manner and degree of evidence required at the successive stages of the litigation.'" Id. (citations omitted). "It is well established that plaintiffs must show injury or at least an imminent threat of injury in order to maintain their standing in a federal court." Id. (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992)). Also, since the plaintiff is invoking this federal court's jurisdiction, she bear the burden of establishing her standing. *See* Common Cause of PA v. Pennsylvania, 558 F.3d 249, 257 (3d Cir. 2009) (citation omitted).

The court in Anderson, 943 F.Supp.2d at 538, stated:

> The Supreme Court has held that in order "to satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

(quoting Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 180–81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)); *see also* Doe v. Nat'l Bd. of Med. Examiners, 210 Fed.Appx.157, 159 (3d Cir. 2006). A plaintiff must have standing "at the time the action commences." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. at 191, 120 S.Ct. at 709.

Additionally, the plaintiff must satisfy the prerequisites to raise a claim seeking an injunction. Doe, 210 Fed.Appx. at 159. "To establish standing in an action for injunctive relief, a plaintiff must show that he or she is likely to suffer future injury from the defendant's illegal conduct." Id. at 159-160 (citation omitted). "Past illegal conduct is insufficient to warrant injunctive relief unless it is accompanied by 'continuing, present adverse effects.'" Id. at 160 (citations omitted); *see also* O'Shea v. Littleton, 414 U.S. 488, 495–96, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). "In order to state a basis for a claim for injunctive relief, the complaint must allege that injury to plaintiff[] is 'certainly impending.'" Phillips v. St. Mary's Medical Center, 2013 WL 1124372, *2 (E.D.Pa. March 19, 2013) (citing Lujan, 504 U.S. at 564 n. 2). "A stated intent to return 'someday' to the source of the alleged injury is not sufficient." *Id.* (citing Lujan, 504 U.S. at 564 n. 2). Thus, the injury must be personal, actual and imminent, and cannot be speculative. Doe, 199 F.3d at 153.

It must now be determined whether the plaintiff can show a likelihood of a future injury. If she cannot, then she lacks standing to seek injunctive relief. The three requirements for standing are "necessary elements of a

plaintiff's case" and mere allegations are insufficient since they are not pleading requirements. Id at 152. "The proper analysis of standing focuses on whether the plaintiff suffered an actual injury, not on whether a statue was violated." Id. at 153. The plaintiff has submitted her affidavit to try and show more than a mere possibility that she will likely be discriminated against by GHMH with respect to her hearing disability and that this discrimination is actual and imminent. In her affidavit, the plaintiff alleges that she will likely use GHMH, which is the closest hospital to her home and which she utilizes when she needs hospital services, in the future for medical and mental health treatment as well as for tests as she has in the past. (Doc. 26-1). The plaintiff has identified an injury that is personal to her since she avers that despite her requests, GHMH did not have a sign language interpreter or assistive device available for her use during her past visits to the hospital except for one occasion.

Specifically, the plaintiff avers in her affidavit that she was an in-patient at GHMH for a week commencing on March 11, 2010, for services relating to her mental health and no sign language interpreter or assistive device was available for her use during that visit. On October 16, 2012, the plaintiff had finger surgery at GHMH and there was no sign language interpreter nor any VRI service or other assistive device. The plaintiff returned to GHMH on October 22, 2012, for a mammogram and she was informed that the mammogram machine at GHMH was broken. She was then sent to Palmerton

Hospital where she received a mammogram. During her visit of October 22, 2012, there was neither an interpreter nor a VRI available to her at GHMH. Further, as alleged in her complaint, plaintiff avers that there was neither an interpreter nor a VRI available to her at GHMH when she went there on February 17, 2013, the day her daughter died. The plaintiff also avers that when she arrived for the April 4, 2013 meeting at GHMH for an explanation about how her daughter died, the meeting could not be started on time because there was neither an interpreter nor VRI service available. The plaintiff alleges that eventually the representatives of GHMH canceled the meeting.

The plaintiff alleges that on April 28, 2013, she went to GHMG due to an irregular heartbeat and stayed over night. She states that this was the only time a VRI was available but even then she was required to wait periodically because the service was on and off. On April 15, 2014, her last visit to GHMH, plaintiff had a CT scan and x-ray for a problem involving kidney stones, and she alleges that neither an interpreter nor a VRI were available.

Recognizing that past exposure to illegal conduct is not sufficient for standing, the plaintiff also avers that her injury is actual and imminent since she "suffer[s] from physical and mental conditions that require ongoing treatment and have in the past and may likely in the future require in-patient treatment, especially my mental condition." (Id., at 4, ¶ 22).

Moreover, the plaintiff has submitted the April 2015 declaration of Terry

Purcell, the Vice President of Ambulatory and Support Services for defendant BMHS, (Doc. 26-2, at 4, ¶'s8-9), and she avers:

> In the late evening of February 17, 2013, when [GHMH] attempted to connect to the videoconferencing system to provide ASL interpreter services for the Plaintiff in the above-caption matter, the system malfunctioned. The malfunction was due to a connectivity issue over which [GHMH] had no control. [GHMH] does not know where the connectivity issue originated.
> On April 1, 2015, BMHS contracted with a new service provider to provide remote video ASL interpreter services utilizing lap-top computers for those patients and visitors who need such accommodation. BMHS no longer uses the MTC for ASL interpreter services.

The plaintiff also concedes in her brief in opposition, (Doc. 26, at 12-13), that on April 1, 2015, GHMH replaced its previous "malfunctioning system" with new ASL interpreter services.

"[T]he plaintiff must put forth a definitive, uncontested intent to return before filing the complaint to establish standing." Anderson, 943 F.Supp.2d at 540 (citation omitted). "A plaintiff's intention to return to defendant's place of public accommodation 'some day' ... without any description of concrete plans, or indeed even any specification of when the some day will be-do not support a finding of the requisite actual or imminent injury." Id. (citing Lujan, 504 U.S. at 564). The plaintiff fails to allege in her affidavit that she has a definitive appointment or plan to return to GHMH for any treatment or test. Thus, the plaintiff fails to establish that she has a plan to return to GHMH. *See*

Anderson, 943 F.Supp.2d at 540-41.

Additionally, "[t]he imminency requirement is applicable in Title III [ADA] cases." Phillips v. St. Mary's Medical Center, 2013 WL 1124372, *3 (citing Doe, 199 F.3d at 153). As the defendants point out, to show that she has standing the plaintiff "needs to show that she will be injured by not having effective communication in the future." (Doc. 27, at 3). Thus, even if the plaintiff did sufficiently show that she may likely in the future require treatment at GHMH for her conditions, and the court has found she did not, she has failed to show that she will likely be discriminated against by GHMH in the future with respect to her hearing disability since GHMH has apparently resolved the prior problem with its ASL interpreter services. In fact, the plaintiff does not contend that she has experienced any problems with GHMH's new service provider and its new video ASL interpreter services. GHMH has remedied the ADA violations alleged by the plaintiff regarding her past visits. As such, there is no likelihood of the alleged past problems the plaintiff encountered at GHMH being repeated since the old the system has been replaced. Therefore, it is not likely that the plaintiff's injury will be redressed by a favorable decision of the court. The prior conduct of GHMH which plaintiff alleges in her affidavit amounted to violations of the ADA, is not sufficient for purposes of standing. See Lujan, 504 U.S. at 564 (citing Lyons,

16

461 U.S. at 102); *see also* Anderson, 943 F.Supp.2d at 538; Brown v. Fauver, 819 F.2d 395, 400 (3d Cir. 1987).

The corrective measure taken by the defendants in the instant case shows that they are responsive to their obligations under the ADA and that there is not a substantial likelihood that the defendants will violate the plaintiff's rights under the ADA again.

The plaintiff has failed to meet her burden of establishing her standing. Thus, the defendants' motion to dismiss will be granted with respect to the plaintiff's Title III ADA claim. Since there is no case or controversy with respect to the plaintiff's ADA claim and the plaintiff has failed to satisfy the injury-in-fact requirement as well as the requirement that it is likely that her injury will be redressed by a favorable decision, it would be futile to allow her to amend this claim. Also, the plaintiff has already submitted her affidavit to try and cure the deficiencies in her complaint as to standing and it has failed to remedy them. As such, the ADA claim (First Claim) will be dismissed with prejudice.

The defendants contend that since the plaintiff lacks standing to bring a claim for Title III injunctive relief and there is no case or controversy for Article III purposes, the court lacks subject-matter jurisdiction, and both of the plaintiff's federal claims (ADA and Rehabilitation Act claims) should be

dismissed pursuant to Rule 12(b)(1). (Doc. 15, at 23 and Doc. 27, at 4-5). Nonetheless, just because the plaintiff's Title III ADA claim for injunctive relief will be dismissed for lack of subject matter jurisdiction does not mean the court also lacks jurisdiction over the plaintiff's Rehabilitation Act claim. *See* Phillips v. St. Mary's Medical Center, 2013 WL 1124372 (court dismissed plaintiffs' Title III claim for injunctive relief for lack of standing but permitted their claim under the Rehabilitation Act to proceed). Thus, "a plaintiff must demonstrate standing separately for each form of relief sought." Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. at 185, 120 S.Ct. at 706; *see also* City of Los Angeles v. Lyons, 461 U.S. 95, 109, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (despite the fact that plaintiff had standing to seek damages, he lacked standing to seek injunctive relief). Stated simply, "standing is not dispensed in gross." Lewis v. Casey, 518 U.S. 343, 358 n. 6, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996).

However, insofar as the plaintiff seeks injunctive relief and declaratory relief regarding her RA claim, these requests for relief will also be dismissed with prejudice for the same reasons that this relief will be dismissed regarding her ADA claim, i.e., for lack of standing. Standing will not exist for injunctive relief and declaratory relief if  "adjudication ... rests upon 'contingent future events that may not occur as anticipated or indeed may not occur at all.'"

18

Pryor v. National Collegiate Athletic Ass'n., 288 F.3d 548, 561 (3d Cir. 2002)

(citations omitted).

### B. Claim for Damages under Section 504 of the Rehabilitation Act

The question now arises as to whether the plaintiff has stated a claim

for money damages with respect to her RA claim.

Section 504 of the RA, 29 U.S.C. §794(a), states, in relevant part:

No otherwise qualified individual with a disability in the United States, ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....

Thus, the RA prohibits discrimination on the basis of disability in

federally funded programs. Blunt v. Lower Merion School Dist., 767 F.3d 247,

274-75 (3d Cir. 2014) "[T]he substantive standards for determining liability

under the Rehabilitation Act and the ADA are the same." Blunt v. Lower

Merion School Dist., 767 F.3d at 275 (quoting Ridley School Dist. v. M.R., 680

F.3d 260, 282-83 (3d Cir. 2012)).

The plaintiff can recover money damages under the RA. The Third

Circuit has held that the available remedies for a violation of §504 of the

Rehabilitation Act "include compensatory damages, injunctive relief, and other

forms of relief traditionally available under suits for breach of contract." _A.W._

_v. Jersey City Pub. Sch._, 486 F.3d 791, 804 (3d Cir. 2007); _see also_ Majocha

v. Turner, 166 F.Supp.2d 316 (W.D.Pa. 2001). In her second count of the

complaint, the §504 RA claim, the plaintiff is deemed as requesting injunctive relief as well as an award of compensatory damages. (Doc. 1 at 12, 14).

In her RA claim, the plaintiff alleges that defendants accept federal financial assistance in the form of Medicare and Medicaid payments. (Doc. 1 at 11). She alleges that defendants qualify as a program or activity under §504 since they are principally in the business of providing health care. (Id.) (citing 29 U.S.C. §794(b)(3)(A)). She also alleges that she is a qualified individual with a disability and was subjected to discrimination solely on the basis of her disability, i.e., by "the failure to provide auxiliary aids and services in order to ensure effective communication." (Id. at 11-12). Indeed, there is no dispute that the plaintiff has a disability and that defendants are places of public accommodation that receive federal funds. Nor is it disputed that a place of public accommodation is required under the regulations to take necessary steps to provide auxiliary aids and services to insure effective communication for an individual with a disability. *See* 28 C.F.R. 36.303.

Additionally, to prove a violation under §504 "[t]he plaintiff must also demonstrate that the defendant knew or should have reasonably been expected to know of her disability. However, to establish liability, a plaintiff need not prove that defendant['s] discrimination was intentional." *Chambers v. Sch. Dist. of Philadelphia Bd. of Educ.*, 827 F. Supp. 2d 409, 417 (E.D. Pa.

20

2011) reconsideration denied, 2012 WL 3279243 (E.D. Pa. Aug. 13, 2012) (internal citations omitted).

The parties do not contest these elements of a basic §504 claim. Rather, the defendants assert that a plaintiff must demonstrate a showing of intentional discrimination or deliberate indifference as a prerequisite for an award of compensatory damages. The court in *Chambers* "agree[d] with the overwhelming majority of circuit courts and the district courts within the Third Circuit that require a plaintiff to prove intentional discrimination in order to be entitled to the remedy of compensatory damages under the ADA and §504." *Id.* at 425. The Third Circuit Court in D.E. v. Central Dauphin School Dist., 765 F.3d 260, 269 (3d Cir. 2014), held that where a plaintiff seeks compensatory damages as a remedy for violations of the RA and the ADA, "it is not enough to demonstrate only that the plaintiff has made out the prima facie case [of disability discrimination]" and that "[h]e or she must also demonstrate that the discrimination was intentional." (citation omitted). Further, "[a] showing of deliberate indifference satisfies that standard." Id. (citation omitted). *See also* S.H. ex rel. Durrell v. Lower Merion School Dist., 729 F.3d 248, 263 (3d Cir. 2013) (Third Circuit held that "a showing of deliberate indifference may satisfy a claim for compensatory damages under §504 of the RA [].").

The plaintiff alleges in her complaint that defendants and their agents acted intentionally and with a reckless disregard for her civil rights. (Doc. 1 at 12). The plaintiff alleges that the defendants knew of her hearing disability

21

based on her prior visits to the hospital and that time after time when she was at the hospital the VRI system did not operate properly and no interpreters were available. In her brief, the plaintiff contends that defendants were deliberately indifferent since they failed to inform her of the circumstances surrounding her daughter's death due to the lack of a functioning VRI system and the lack of an interpreter on February 17, 2013. (Doc. 26, at 16-17). The defendants maintain that they provided effective communication to the plaintiff on the night in question since the plaintiff's daughter was dead on arrival at the hospital and since a nurse gave the plaintiff a note informing her that "your daughter is dead." The defendants state that "with or without an interpreter, the hospital had no information to give to plaintiff concerning the circumstances surrounding her daughter's death because she was DOA." (Doc. 27, at 11). Regardless, the plaintiff contends that discovery is needed to explore whether the facts of her case are sufficient to determine whether the defendants were deliberately indifferent.

The Third Circuit Court in D.E., 765 F.3d at 269, stated:

To satisfy the deliberate indifference standard, a plaintiff "must present evidence that shows both: (1) knowledge that a federally protected right is substantially likely to be violated ..., and (2) failure to act despite that knowledge." Id. at 265 (citing Duvall v. Cnty. of Kitsap, 260 F.3d 1124, 1139 (9th Cir. 2001)). "Deliberate indifference does not require a showing of personal ill will or animosity toward the disabled person." Id. at 263 (quoting Meagley v. City of Little Rock, 639 F.3d 384, 389 (8th Cir. 2011) (internal quotation marks omitted)). It does, however, require a " 'deliberate choice, rather than negligence or bureaucratic

22

inaction.'" Id. (quoting Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 276 (2d Cir. 2009)).

It is premature at this stage of the case to determine whether the plaintiff can satisfy the deliberate indifference standard to recover damages with respect to her RA claim. As such, the defendants' motion to dismiss the plaintiff's RA claim for damages will be denied without prejudice to refiling, if appropriate, at the summary judgment stage. *See D.E., supra* (a motion for summary judgment was filed on the question of deliberate indifference with respect to plaintiff's claim for damages under the ADA and RA); *see also S.H., supra* (court considered whether there was evidence in the summary judgment record that created a genuine factual dispute as to whether the defendant school district was deliberately indifferent toward the plaintiff disabled student).

### C. PHRA Claim

Since one of the plaintiff's federal claims will proceed, the court can exercise its supplemental jurisdiction under 28 U.S.C. §1367(c) with respect to the plaintiff's state claim under the PHRA. However, as noted, the analysis of an ADA claim applies equally to a PHRA claim. *See* Kelly v. Drexel Univ., 94 F.3d at 105 (the court should treat PHRA and ADA claims coextensively since they define disability substantially the same). As such, the same

23

reasoning that applies to the plaintiff's Title III ADA claim also applies to her disability claim under the PHRA. Thus, since the plaintiff's ADA claim for injunctive relief will be dismissed with prejudice for lack of standing, her PHRA claim will also be dismissed with prejudice.

## V.     CONCLUSION

In light of the foregoing, the defendants' motion to dismiss, (Doc. 11), will be **GRANTED, IN PART, AND DENIED, IN PART**. An appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: July 7, 2015**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2015 MEMORANDA\15-0294-01.wpd